NVB 4001 (Rev. 09/20)

## * * § 362 INFORMATION SHEET * *

Jay Philip Hardy; Lauren Roberta Hardy

DEBTOR

Mountain America Credit Union

MOVANT

25-11638-abl

BK-

CHAPTER: 13

MOTION #:

---

### Certification of Attempt to Resolve the Matter Without Court Action:

*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*

*Date:* 09/29/2025

*Signature:* /s/ Angela H. Dows

*Attorney for Movant*

---

Note for parties not represented by an attorney: Information about motions for relief from the automatic stay is available at the U.S. Bankruptcy Court's website: https://www.nvb.uscourts.gov/filing/filing-pro-se/legal-services/.

---

PROPERTY INVOLVED IN THIS MOTION: Motor Vehicle (2024 Ram 3500)

NOTICE SERVED ON:  Debtor(s) ✔ ; Debtor's counsel ✔ ; Trustee ✔ ;

DATE OF SERVICE: 09/29/2025

---

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st $48,198.97 | 1st |
| 2nd | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: $48,198.97 | Total Encumbrances: |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| $54,900.00 average trade-in value, upon information and belief. | $34,029.00 (See ECF No. 1, at page 23 of 47.) |

---

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT : |
|---|---|
| Amount of Note: $50,314.98 | . |
| Interest Rate: 12.74% | . |
| Duration: 72 months | . |
| Payment per Month: $1,008.04 | . |
| Date of Default: 05/26/2025 | . |
| Amount in Arrears: $5,040.20 | . |
| Date of Notice of Default: n/a | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Angela Dows, attorney for Mountain America Credit Union | SUBMITTED BY: |
|  | SIGNATURE: |

1  ANGELA H. DOWS, ESQ.
Nevada Bar No. 10339
2  **CORY READE DOWS & SHAFER**
1333 North Buffalo Drive, Suite 210
3  Las Vegas, Nevada 89128
Tel:  (702) 794-4411
4  Fax: (702) 794-4421
E-mail: adows@crdslaw.com
5  *Attorneys for Creditor*
MOUNTAIN AMERICA CREDIT UNION

6

7               **UNITED STATES BANKRUPTCY COURT**

8                    **DISTRICT OF NEVADA**

9  In re:                          )   Case No.:      25-11638-abl
                                    )   Chapter:       13
10 JAY PHILIP HARDY,                )
11 LAUREN ROBERTA HARDY,            )   Hearing Date:  November 5, 2025
                                    )   Hearing Time: 10:30 a.m.
12                        Debtors.   )   Estimated Time for Hearing: 1-2 Minutes

13             **MOUNTAIN AMERICA CREDIT UNION'S**
14          **MOTION FOR RELIEF FROM AUTOMATIC STAY**
15            **RE: MOTOR VEHICLE (2024 RAM 3500)**

16          COMES NOW Creditor, MOUNTAIN AMERICA CREDIT UNION by and through its

17 counsel, Angela H. Dows, Esq. of the law firm of Cory Reade Dows & Shafer, and moves the

18 Court for an Order allowing relief from the Automatic Stay as it relates to a motor vehicle for

19 cause, specifically failure to make payments when due and under the Chapter 13 Plan pursuant to

20 11 U.S.C. § 362(d)(1), as well as 362(d)(2) for potential lack of equity and not necessary to an

21 effective reorganization. The current Motion is made and based upon the papers and pleadings

22 on file herein, the Memorandum Points and Authorities, the attached §362 Information Sheet, the

23 exhibits on file, and any oral argument the Court may allow at the time of the hearing of this

24 matter.

25

26

27

28                                  2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

1.      Movant MOUNTAIN AMERICA CREDIT UNION is a credit union with its principal place of business in Salt Lake County, Utah, and authorized to do business in Nevada.

2.      **The Filing of the Instant Petition**. JAY PHILIP HARDY and LAUREN ROBERTA HARDY filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 25, 2025.

3.      **The Secured Debt**. On or about October 12, 2024, LAUREN HARDY, for valuable consideration, made, executed and delivered to Chapman's Las Vegas Dodge, LLC, later assigned to Movant, a Simple Interest Vehicle Contract for Sale and Security Agreement ["Subject Note"] in the principal financed amount of Fifty Thousand Three Hundred Fourteen Dollars and Ninety-Eight Cents ($50,314.98) at an interest rate of Twelve and 74/100 Percent (12.74%). The Subject Note required Seventy-Two (72) monthly payments of One Thousand Eight Dollars and Four Cents ($1,008.04) beginning in November of 2024.  A true and correct redacted copy of the Subject Note is attached hereto as **Exhibit 1**.

4.      **The Movant's Interest in the Property**. Movant has a lien/security interest in the subject collateral, a 2024 Ram 3500 motor vehicle, with a Vehicle Identification Number ending in 3586 ["Subject Vehicle"]. A true and correct redacted copy of the Subject Vehicle Lien and Title Information Report (redacted) is attached hereto as **Exhibit 2.**

5.      **The Value of the Property**. Although the fair market value of the Subject Vehicle has not been established under 11 U.S.C. § 506, it is asserted by Movant upon information and belief to be Fifty-Four Thousand Nine Hundred Dollars and Zero Cents ($54,900.00) for an average trade-in value as of September of 2025.  A true and correct copy of a

3

J.D. Power valuation is attached at **Exhibit 3**.  Upon information and belief, the Subject Vehicle will continue to decline in value.

6.      **Delinquency**.  There are missing post-petition payments as to the Subject Note/Subject Vehicle, with the Subject Vehicle/claim showing due for May of 2025.

7.      **The Total Indebtedness and Arrears under the Agreement**.  As of September 29, 2025 the principal balance on the subject loan was Forty-Eight Thousand One Hundred Ninety-Eight Dollars and Ninety-Seven Cents ($48,198.97), and the total arrears were Five Thousand Forty Dollars and Twenty Cents ($5,040.20), for five (5) payments of One Thousand Eight Dollars and Four Cents ($1,008.04) each missing for May of 2025 through September of 2025 to date.  A true and correct redacted copy of an account status for the subject loan is attached at **Exhibit 4**.

8.      **Debtors' Proposed Claim Treatment**. In Debtors' Chapter 13 Plan, Debtors have scheduled the Subject Vehicle/claim under Section 4.6, for "Claims Paid Directly by Debtor or Third Party."

9.      **The Treatment in Debtors' Schedules**. Debtors have listed the Subject Vehicle in Schedules A/B and D with an asserted value of Thirty-Four Thousand Twenty-Nine Dollars and Zero Cents ($34,029.00).  (*See* ECF No. 1, at page 23 of 47.)  Debtors have not listed the Subject Vehicle as exempt under Schedule C.  (*See* ECF No. 1, at page 20 of 47.)

10.     **LR 4001.**  On September 18, 2025, counsel for Movant communicated with counsel for Debtors via electronic correspondence and mailed correspondence to attempt to resolve the matter prior to filing the instant motion, with an end date of September 26, 2025. The correspondence did not resolve the matter short of filing the instant motion.

## II.

## MOVANT RESPECTFULLY REQUESTS:

**A.  RELIEF FROM STAY FOR CAUSE PURSUANT TO 11 U.S.C. § 362(d)(1), INCLUDING FAILURE TO MAKE POST-PETITION PAYMENTS AND AS SCHEDULED IN THE CHAPTER 13 PLAN; AND**

**B.  RELIEF FROM STAY FOR POTENTIAL LACK OF EQUITY AND NOT NECESSARY TO AN EFFECTIVE REORGANIZATION PURSUANT TO 11 U.S.C. § 362(d)(2).**

11.     **Standard of Review**.  11 U.S.C. § 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

12.     **Payment Default Pursuant to 11 U.S.C. § 362(d)(1)**.  Pursuant to 11 U.S.C. § 362(d)(1), Movant is entitled to adequate protection of its interest in the Subject Vehicle collateral.  *In re Ellis*, 60 B.R. 432, 435 (9th Cir. BAP 1985); *In re Avila*, 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004).  Movant submits that adequate protection in this case requires normal and periodic payments, as called for by the Subject Note, plus the repayment of any and all delinquent amounts owed to Movant, including all costs incurred in the filing of this Motion, subject to Court approval.  Movant is informed and believes that Debtor is presently unwilling and/or unable to provide adequate protection to the Movant for the payments due and owing under the Subject Note, and there is no probability that adequate protection can be afforded to Movant within a reasonable time when the subject loan is missing payments from May of 2025 to the present date.

13.    **Failure to Maintain Scheduled Claim under Chapter 13 Plan Pursuant to 11 U.S.C. § 362(d)(1)**.  Debtors have scheduled the Subject Vehicle/claim under Section 4.6, for "Claims Paid Directly by Debtor or Third Party," however have not maintained payments under the scheduled claim, indicating a lack of adequate protection as to the Subject Vehicle.

14.    **Potential Lack of Equity and Not Necessary to an Effective Reorganization Pursuant to 11 U.S.C. § 362(d)(2)**.  There is a total amount due and owing on the subject loan of Forty-Eight Thousand One Hundred Ninety-Eight Dollars and Ninety-Seven Cents ($48,198.97) as of September of 2025.  The average trade-in value for the Subject Vehicle is Fifty-Four Thousand Nine Hundred Dollars and Zero Cents ($54,900.00) as of September of 2025, which is more than the amount due and owing on the subject loan, and does not include deductions for the cost of sale and/or re-sale.  The Debtors have indicated that the Subject Vehicle should be valued at Thirty-Four Thousand Twenty-Nine Dollars and Zero Cents ($34,029.00).  (*See* ECF No. 1, at page 23 of 47.)  Upon information and belief, the Subject Vehicle will continue to decline in value, and has not been formally appraised or valued to date. The Subject Vehicle is not listed as part of Debtors' exempt property, there is not an indication as to how Subject Vehicle would be necessary to an effective reorganization in this Chapter 13 matter.  (*See* ECF No. 1, at page 20 of 47.)

15.    Movant requests relief from the automatic stay under 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2).  Pursuant to LR 9014(g), Movant requests that LR 9021(b)(1) be waived as a copy of Movant's proposed Order thereon is attached hereto as **Exhibit 5** and is served with the subject Motion.

## III.

## CONCLUSION

WHEREFORE, Movant respectfully prays for an Order of this court as follows:

1.      Terminating the automatic stay of 11 U.S.C. § 362 as it applies to the enforcement by Movant of all of its rights under the Subject Note and/or Subject Vehicle, including a waiver of the 14-day stay to Federal Rule of Bankruptcy Procedure 4001(a)(3);

2.      Granting Movant an Order with leave to enforce the Subject Vehicle collateral security interest under the Subject Note;

3.      The requirements of Local Rule 9021 be waived; and

4.      For such other and further relief as the Court deems just and proper.

DATED this 29th day of September, 2025.


                                    **CORY READE DOWS & SHAFER**

                                    By: /s/ Angela H. Dows
                                    ANGELA H. DOWS, ESQ.
                                    Nevada Bar No. 010339
                                    1333 North Buffalo Drive, Suite 210
                                    Las Vegas, Nevada 89128
                                    Attorneys for Creditor
                                    MOUNTAIN AMERICA CREDIT UNION

## <u>CERTIFICATE OF SERVICE</u>

1.     On September 29, 2025, I served the following document(s) *(specify)*:

<u>**MOUNTAIN AMERICA CREDIT UNION'S**</u>
<u>**MOTION FOR RELIEF FROM AUTOMATIC STAY**</u>
<u>**RE: MOTOR VEHICLE (2024 RAM 3500)**</u>

2.     I served the above-named document(s) by the following means to the persons as listed below: *(Check all that apply)*

■ **a. ECF System** *(You must attach the "Notice of Electronic Filing," or list all persons and addresses and attach additional paper if necessary)*

| | |
|---|---|
| Eric C. Severino<br>Law Office of Erik Severino<br>7251 W. Lake Mead Boulevard<br>Suite 300<br>Las Vegas, NV 89128<br>*Counsel for Debtors* | Rick A. Yarnall<br>701 Bridger Avenue<br>#820<br>Las Vegas, NV 89101<br>*Chapter 13 Trustee* |
| Jay Philip Hardy<br>Lauren Roberta Hardy<br>PO. Box 7157<br>Bunkerville, NV 89007<br>*Debtors* | |

■ **b. United States mail, postage fully prepaid** *(List persons and addresses. Attach additional paper if necessary)*

| | |
|---|---|
| Eric C. Severino<br>Law Office of Erik Severino<br>7251 W. Lake Mead Boulevard<br>Suite 300<br>Las Vegas, NV 89128<br>*Counsel for Debtors* | Rick A. Yarnall<br>701 Bridger Avenue<br>#820<br>Las Vegas, NV 89101<br>*Chapter 13 Trustee* |
| Jay Philip Hardy<br>Lauren Roberta Hardy<br>PO. Box 7157<br>Bunkerville, NV 89007<br>*Debtors* | |

☐ **c.   Personal Service** *(List persons and addresses. Attach additional paper if necessary)*
    I personally delivered the document(s) to the persons at these addresses:

☐     For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the documents(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐  **d.  By direct email (as opposed to through the ECF System)** *(List persons and email addresses. Attach additional paper if necessary*)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐  **e.  By fax transmission** *(List persons and fax numbers. Attach additional paper if necessary*)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used . A copy of the record of the fax transmission is attached.

☐  **f . By messenger** *(List persons and addresses. Attach additional paper if necessary*)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. *(A declaration by the messenger must be attached to this Certificate of Service).*

**I declare under penalty of perjury that the foregoing is true and correct.**

**Signed on** *(date)***: September 29, 2025**

**Angela H. Dows**                     **/s/ Angela H. Dows**
(NAME OF DECLARANT)              (SIGNATURE OF DECLARANT)

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **EXHIBIT 1**
Subject Note

## LAW 553-NV-e 10/12

## SIMPLE INTEREST VEHICLE CONTRACT FOR SALE AND SECURITY AGREEMENT

**SECTION A:**

Buyer's Name(s): **LAUREN HARDY**

Name: **N/A**

Bus. Phone: **N/A**

Res. Phone: **N/A**

CREDITOR: **CHAPMAN'S LAS VEGAS DODGE LLC**
Address: **3175 E. SAHARA**
City: **LAS VEGAS**          County: **CLARK**
State: **NV**               Zip: **89104**
Phone: **(702) 457 - 1061**

Stock No.: **25294**       Salesman: **SCOTT REBER**       Date: **10/12/2024**

**SECTION B:**      DISCLOSURE MADE IN COMPLIANCE WITH FEDERAL TRUTH IN LENDING ACT.

| | | |
|---|---|---|
| **ANNUAL PERCENTAGE RATE** | The cost of your credit as a yearly rate. | **12.74** % |
| **FINANCE CHARGE** | The dollar amount the credit will cost you. | $ **22,263.90** |
| **Amount Financed** | The amount of credit provided to you or on your behalf. | $ **50,314.98** |
| **Total of Payments** | The amount you will have paid after you have made all payments as scheduled. | $ **72,578.88** |
| **Total Sales Price** | The total cost of your purchase on credit, including your down payment of $ **15,000.00** . | $ **87,578.88** |

Your Payment Schedule will be: **MONTHLY**

(e) means an estimate

| Number of payments: | Amount of payments: | When payments are due: |
|---|---|---|
| 72 | 1,008.04 | 11/26/2024 |
| | | |
| | | |

**INSURANCE AND DEBT CANCELLATION:** Credit life insurance, credit disability insurance and debt cancellation coverage, which is also known as GAP coverage, are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| | Premium: | Term: | Signature(s): | |
|---|---|---|---|---|
| Credit life: | $ N/A | N/A | I want credit life insurance: | X N/A _Signature(s)_ |
| Joint credit life: | $ N/A | N/A | We want joint credit life insurance: | X N/A _Signature(s)_ |
| Credit disability: | $ N/A | N/A | I want credit disability insurance: | X N/A _Signature(s)_ |
| Credit life and disability: | $ N/A | N/A | I want credit life and disability insurance: | X N/A _Signature(s)_ |
| Joint credit life and disability: | $ N/A | N/A | We want joint credit life and single disability insurance: | X N/A _Signature(s)_ |
| Debt cancellation coverage (GAP coverage) | $ N/A | N/A | I want debt cancellation coverage (GAP coverage): | X _Signature(s)_ |

You may obtain property insurance from anyone you want that is acceptable to the Creditor on page 1 of 6. If you get the insurance from the Creditor, you will pay $ _____ **N/A** and the term of the insurance will be **N/A** .

**SECURITY:** You are giving a security interest in the goods or property being purchased.

☐ If checked, you are giving a security interest in **N/A**

**LATE CHARGE:** If a payment is more than 10 days late, you will be charged $15 or 8 percent of the payment, whichever is less.

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and penalties.

## SECTION C: ITEMIZATION OF AMOUNT FINANCED.

1. Vehicle Selling Price — $ 59,600.00

   Plus: Documentary Fee — $ 589.00

   (This charge represents costs and profit to the dealer for items such as inspecting, cleaning, adjusting vehicles, and preparing documents related to the sale.)

   Plus: Emissions Inspection Fee — $ 52.50

   Plus: Other ( N/A ) — $ N/A

   Plus: Other ( N/A ) — $ N/A

   Plus: Other ( N/A ) — $ N/A

   Total Taxable Selling Price — $ 60,241.50

2. Total Sales Tax — $ 5,045.23

3. Amounts Paid to Public Officials

   a. Titling Fee — $ 28.25

   b. Registration Fee — $ N/A

   c. Other — $

   Total Official Fees (Add 3a through 3c) — $ 28.25

4. Optional, nontaxable, fees or charges

   a. N/A — $ N/A

   b. N/A — $ N/A

   c. N/A — $ N/A

   d. N/A — $ N/A

   e. N/A — $ N/A

   f. N/A — $ N/A

   Total Optional, nontaxable fees or charges (Add 4a through 4f) — $ N/A

5. TOTAL CASH SALES PRICE — $ 65,314.98

6. Gross Trade in Allowance — $

   | Year | Make | Model | VIN |
   |---|---|---|---|

   Less Prior Credit or Lease Balance — $

   Net Trade In Allowance (If negative, enter 0 and see line 11a) — $ 0.00

7. Down Payment (Other Than Net Trade-In Allowance):

   a. Trade-In Sales Tax Credit — $

   b. Cash — $ 15,000.00

   c. Manufacturer's Rebate — $

   d. Deferred Down Payment — $ N/A

   e. Other ( N/A ) — $ N/A

   Down Payment (Add 7a through 7e) — $ 15,000.00

8. TOTAL DOWN PAYMENT AND NET TRADE-IN ALLOWANCE (Add 6 and 7) — $ 15,000.00

9. UNPAID BALANCE OF CASH SALES PRICE (Subtract 8 from 5) — $ 50,314.98

10. Plus Optional Insurance and Debt Cancellation Charges*

    a. Credit Life Insurance Premium

    Paid to ( N/A ) Term ( N/A ) — $ N/A

    b. Credit Disability Insurance Premium

    Paid to ( N/A ) Term ( N/A ) — $ N/A

    c. Debt Cancellation Coverage (GAP Coverage)

    Paid to ( N/A ) Term ( N/A ) — $ N/A

    d. Other Insurance

    Paid to ( N/A ) Term ( N/A ) — $ N/A

    Total Optional Insurance and Debt Cancellation Charges (Add 10a through 10d) — $

11. Other Amounts Financed*

    a. Prior Credit or Lease Balance

    Paid to ( ) — $

    b. N/A

    Paid to ( N/A ) — $ N/A

    c. N/A

    Paid to ( N/A ) — $ N/A

    Total Other Amounts Financed (Add 11a through 11c) — $ 0.00

12. TOTAL AMOUNT FINANCED (Add 9, 10 and 11) — $ 50,314.98

*Seller may retain or receive a portion of this amount.

## SECTION D: VEHICLE RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

This contract is made the __12__ (day) of __OCTOBER__ (month) of __2024__ (year), between you, the Buyer(s) shown on page 1 of 6, and us, the Seller shown as Creditor on page 1 of 6. Having been quoted a cash price and a credit price and having chosen to pay the credit price (shown as the Total Sales Price in Section B on page 1 of 6), you agree to buy and we agree to sell, subject to all the terms of this contract, the following described vehicle, accessories and equipment (all of which are referred to in this contract as "Collateral"):

New or Used: __USED__                                    Year and Make: __2024__      __RAM__

Series: __3500__                          Body Style: __CREW CAB LONG BED__                          No. Cyl.: __6__

If truck, ton capacity: _____                    Manufacturer's Serial Number: ▮▮▮▮▮▮▮__3586__

Use for which purchased:  [X] Personal      [ ] Business      [ ] Agriculture
INCLUDING:

| | | | |
|---|---|---|---|
| [ ] Sun/Moon Roof | [ ] Cassette | [ ] Air-Conditioning | [ ] Tilt Wheel |
| [ ] Power Steering | [ ] Compact Disc Player | [ ] Power Door Locks | [ ] Cruise Control |
| [ ] Power Windows | | | |

Additional columns: [ ] Automatic Transmission, [ ] Power Seats, [ ] Vinyl Top, [ ] AM/FM Stereo

**WHITE**        Color __N/A__        Tires __NA__                                    Lic. No. _____

You, severally and jointly, promise to pay us the Total of Payments (shown in Section B) according to the Payment Schedule (also shown in Section B), until paid in full, together with interest after maturity at the Annual Percentage Rate disclosed on page 1 of 6.

To secure such payment, you grant to us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. Insurance in which we or our assignee are named as beneficiary or loss payee, including any proceeds of such insurance or refunds of unearned premiums, or both, are assigned as additional security for this obligation and any other obligation created in connection with this sale. We, our successors and assigns, hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

Address where Collateral will be located:

County _____                                    State _____

### Notice of Rescission Rights (Option to Cancel)

If the Buyer signs here, the notice of rescission rights on page 5 of 6 is applicable to this contract.

Buyer's signature X _____                    Co-Buyer's signature X _____

STATE DISCLOSURE REQUIREMENTS: The provisions of Section B and Section C are incorporated into this agreement for purposes of state disclosure requirements.

Additional Terms and Conditions: The additional terms and conditions set forth in this contract are a part of this contract and are incorporated herein by reference.

OPTION: _____ You pay no Finance Charge if the Total Amount Financed, Item No. 12, Section C, is paid in full on or before the __12__ (day) of __OCTOBER__ (month) of __2024__ (year).

SELLER'S INITIALS: _____

## SECTION E:

☐ If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper.

If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

UPON ENTERING INTO THIS CONTRACT, YOU WILL RECEIVE A PAPER COPY OF THE ORIGINAL CONTRACT ELECTRONICALLY SIGNED AND COMPLETE WITH ALL TERMS, CONDITIONS AND DISCLOSURES TO TAKE WITH YOU.

### NOTICE TO BUYER

**Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to a completed copy of this agreement. If you pay the amount due before the scheduled date of maturity of the indebtedness and you are not in default in the terms of the contract for more than 2 months, you are entitled to a refund of the unearned portion of the finance charge. If you fail to perform your obligations under this agreement, the vehicle may be repossessed and you may be liable for the unpaid indebtedness evidenced by this agreement.**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 3 of 6, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

The text of the preceding two paragraphs is set forth below in Spanish:

Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo en la pagina 3 de 6, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.

LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.

**BUYER AND CO-BUYER ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN PAPER COPY OF THIS CONTRACT AND THE DISCLOSURE ON PAGE 4 OF 6 AT THE TIME OF SIGNING.**

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS OTHERWISE INDICATED IN SECTION C.

Buyer: X _____ Date: **10/12/2024** Co-Buyer: X _____ Date: _____

Creditor: CHAPMAN'S LAS VEGAS DODGE LLC _____ Date: **10/12/2024** By: X _____ Title: **F&I MANAGER**

---

### ADDITIONAL TERMS AND CONDITIONS

**Simple Interest Contract:** This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule set forth in the disclosures on page 1 of 6 may differ. The final payment may differ depending upon the dates payments are received and events which occur after this contract is made. For example, early payments will have the effect of reducing your final payment, while late payments will cause your final payment to be higher. Your promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums due under this contract, even if the amount of the final payment differs from the amount of final payment disclosed on page 1 of 6 of this contract.

**Default:** If you default in the performance of this agreement, because (1) you fail to make a payment later than 30 days past the date required by the agreement, or (2) the prospect of payment, performance or realization of collateral is significantly impaired (the burden of establishing the prospect of significant impairment is on the Seller), we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, and (3) take immediate possession of the vehicle. Upon taking possession of the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to the unpaid sums owing under this contract. Attorney's fees and court costs are allowed too. If there is any money left over (surplus), it will be paid to you. If a balance still remains owing, you promise to pay that balance upon demand. If you default or breach this agreement, you agree to pay finance charges at the Annual Percentage Rate shown on page 1 of 6 until all sums owing us are paid in full. Our remedies are cumulative and taking of any action is not a waiver and does not prohibit us from pursuing any other remedy. You promise to pay reasonable collection costs and expenses, including attorney's fees, if you default under this agreement. If suit is filed, you agree that attorney's fees and costs will be awarded to the prevailing party. If the vehicle is repossessed, we may store personal property found in the vehicle for your account and at your expense and, if you do not claim property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.

**Delinquency and Collection Charges:** You will pay a delinquency charge equal to the lesser of $15 or 8 percent of any installment in default for more than 10 days. If you default as described in the preceding paragraph and we refer this contract for collection to an attorney who is not our salaried employee or a salaried employee of the holder of this contract, you will pay reasonable attorney's fees plus court costs, and reasonable collection costs to the extent not prohibited by law.

**Demand for Full Payment and Additional Remedies on Default:** If you default under this contract, at the time of the default or any time after default (if the default has not been cured previously) we may require immediate payment of the unpaid portion of the amount you owe us. If there is any money left over (surplus), it will be paid to you. On any default, we will have all the remedies of a secured party under the Uniform Commercial Code. If the cash price on page 2 of 6 is $1,000 or less, you will not be personally liable for any deficiency incurred in a sale after repossession.

**Ownership of the Collateral:** You represent that there are no liens, claims or encumbrances on the Collateral except for the security interest you grant by this contract to us and you further represent that you have executed no financing statement covering the Collateral except for one relating to this contract.

**Location and Use of Collateral:** You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent, you may not permanently take the Collateral out of the State shown in Section D in the section entitled "Address Where Collateral Will Be Located" and you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means. You will comply with all laws, ordinances, regulations and orders relating to the Collateral. You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.

**Inspection of the Collateral:** You agree that we may inspect the Collateral at any reasonable time.

**Taxes:** You are responsible for and will pay when due all taxes and assessments levied on the Collateral. If you fail to do so, we may pay any such tax or assessment on your behalf. An amount equal to that which we paid will be added to the Total of Payments then owing, and you will be charged a finance charge on the amount we paid at the highest lawful contract rate.

**Property Insurance:** You will keep the Collateral insured against such risks and in such amount as we may from time to time require with an insurer that you choose and we approve. As indicated in Section B, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you will pay all premiums for this insurance when the premiums are due and payable. If you provide property insurance, you will deliver the policies to us as additional security and will provide us with receipts showing payment of premiums. If you do not obtain the insurance or pay the premiums, we may do so for you. If we do this, an amount equal to that which we have paid for the premiums will be added to the Total of Payments then owing and a finance charge at the highest lawful rate will be charged on that amount. If we do not obtain the insurance, none of our other rights and remedies will be prejudiced. You agree that any proceeds from insurance are to be used to either repair or replace the vehicle. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed. If you default (as described on page 4 of 6), we may cancel the insurance and credit any insurance premium refunds to the unpaid balance of this contract.

## LIABILITY INSURANCE IS NOT REQUIRED BY THIS CONTRACT. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM LIABILITY INSURANCE IS TO BE OBTAINED.

**Information to Insurance Company or Agent:** You give your permission to furnish any information about the Collateral or any information about insurance policies on the Collateral to an insurance agent or company.

**Credit Life Insurance, Credit Disability Insurance and Debt Cancellation Coverage (GAP Coverage):** If you indicated in Section B that you want optional credit life insurance, credit disability insurance or debt cancellation coverage (GAP coverage), or any combination thereof, you agree to pay for such insurance at the premium shown in Section B.

**NO WARRANTIES: THE SELLER MAKES NO REPRESENTATIONS, PROMISES OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE COLLATERAL OR WHETHER THE COLLATERAL IS SUITABLE OR FIT FOR THE PARTICULAR PURPOSE INTENDED UNLESS THE SELLER HAS DONE SO IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER AS THE ORIGINAL SELLER OF THE COLLATERAL. HOWEVER, IF THE SELLER MAKES AN EXPRESS WARRANTY IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER OR, WITHIN 90 DAYS AFTER THE DATE OF THIS CONTRACT, THE SELLER ENTERS INTO A SERVICE CONTRACT WITH THE BUYER THAT APPLIES TO THE COLLATERAL, THE EXCLUSION OF IMPLIED WARRANTIES SET FORTH IN THIS PARAGRAPH DOES NOT EXCLUDE ANY IMPLIED WARRANTIES THAT MAY EXIST WITH RESPECT TO THE COLLATERAL DURING THE TERM OF THE CONTRACT OR AGREEMENT IN WHICH THE EXPRESS WARRANTY IS MADE.**

**Notices:** Any notice we have to give you pursuant to the Uniform Commercial Code will be reasonable if we send it to your address shown in Section D in the section entitled "Your Address After Receipt of Possession of Collateral" at least 5 days before the event with respect to which notice is required unless we have actual knowledge of a change in your address and, in that event, the notice will be reasonable if we send it to the changed address.

**Time is of the Essence:** You understand that all payments that are required must be made on the day due.

**Exercising our Rights:** We can, without notice, delay enforcing our rights or exercise only part of them, without losing them, or waive a right we have to one Buyer without waiving it as to the other(s).

**Meaning of Words:** In this contract the words "you" and "your" means each and all those who sign this contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we," "us" and "ours" means the Creditor shown on page 1 of 6 in Section A, and if this contract is assigned, its successors and assigns and any other holder of this contract.

**Governing Law:** This contract has been delivered in the State of Creditor's place of business and will be governed by the laws of that State and applicable federal law.

**Invalidity:** Wherever possible each provision of this contract shall be interpreted so that it is valid under applicable law, but if any provision is prohibited or invalid, the remaining provisions of this contract will continue to be valid.

**Notice of Rescission Rights (Option to Cancel):** The provisions of this paragraph only apply if you have signed the notice of rescission rights on page 3 of 6 of this contract. (1) You agree to furnish the Seller any documentation necessary to verify information contained in your credit application. (2) You acknowledge that it may take a few days for the Seller to verify your credit and assign the contract. In consideration of the Seller agreeing to deliver the vehicle, you agree that if the Seller is unable to assign the contract to a Financial Institution with whom the Seller regularly does business pursuant to terms of assignment acceptable to the Seller, the Seller may elect to rescind the contract. (3) If the Seller elects to rescind the contract, the Seller shall, within 20 days after the date of the contract, give you notice of the rescission. Such notice shall be deemed given upon deposit of a written notice in the United States mail directed to you at the address you stated in the contract or upon any other manner in which actual notice is given to you. Upon receipt of such notice, you shall immediately return the vehicle to the Seller in the same condition as when sold, reasonable wear and tear excepted, and the contract shall be deemed rescinded. The Seller agrees, upon rescission of the contract, to restore to you all consideration received in connection with the contract, including any trade-in vehicle. (4) If the vehicle is not immediately returned to the Seller after giving notice of the Seller's election to rescind the contract, you are liable to the Seller for all expenses incurred by the Seller in obtaining possession of the vehicle, including attorney's fees, and the Seller has the right to repossess the vehicle as permitted by law. (5) While the vehicle is in your possession, all terms of the contract, including those related to the use of the vehicle and insurance for the vehicle, are in force and all risk of loss or damage to the vehicle must be assumed by you. You shall immediately pay all reasonable repair costs related to any damage to the vehicle while it is in your possession or under your control and until the vehicle is returned to the Seller.

## NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 3 of 6, federal regulation may require a special buyer's guide to be displayed on the window.

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**Assignment:** Seller may transfer this contract or any interest herein to Assignee. Such assignment will grant the Assignee all of Seller's rights, privileges, and remedies. The Seller may assign this contract electronically. Contact Assignee about this contract at _____

**MOUNTAIN AMERICA CREDIT UNION**

(Insert Assignee contract information)

Seller Signs: _____

By: **KASANDRA EGELSTON** _Christina Lombardo_

Title: **F&I MANAGER**

To induce Assignee to purchase the contract, Seller represents and warrants to Assignee as follows: (a) the contract is genuine and the statements and amounts inserted herein are correct; (b) the contract and security interest arose entirely from the sale of the Collateral or services described in the contract, or both; (c) the down payment, if any as shown on page 2 of 6 of this contract, has been received and no part thereof was advanced directly or indirectly by Seller to Buyer; (d) the goods and services have been furnished to the satisfaction of Buyer and all obligations of warranty to Buyer, either express or implied, have been and will continue to be fulfilled by Seller; (e) the Collateral or services, or both, have been sold, provided and delivered to and accepted by Buyer; (f) the security interest granted to Seller in the contract constitutes a valid first lien on the Collateral and has been filed or recorded according to law to preserve the priority of each lien; (g) the Collateral is free and clear of all liens and encumbrances, except the security interest granted by this contract; (h) the full amount of the stated Total of Payments remains unpaid; (i) Seller is the holder of the contract and the security interest in the Collateral free and clear of all liens and encumbrances and Seller has full power and authority to assign the same; (j) the transaction was consummated on the above date set forth in the contract and Buyer did not receive possession of the Collateral prior to the date of consummation; (k) Buyer was furnished a completed copy of the contract prior to consummation; (l) the Collateral is insured with a company acceptable to Assignee against physical damage in addition to such other risks as Assignee requires under an insurance policy acceptable to Assignee; (m) Seller has not knowingly communicated to Assignee incorrect information relating to the Buyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement; (n) the facts set forth in the contract are true; (o) Buyer has no defense or counterclaim to payment of the obligation evidenced by the contract; (p) Buyer is or, if more than one, each is not a minor and has legal capacity to execute this contract and is liable thereon; and (q) Seller has no reason to believe the Buyer has ever violated any laws concerning liquor or narcotics.

In the event any warranty shall be breached or any representation shall be false, Seller shall, upon demand and irrespective of whether the contract is then in default, repurchase the contract from Assignee at a price equal to the unpaid balance of the contract plus accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect on the date of such demand by Assignee, plus any costs or expenses of collection, including attorney's fees, whether incurred by Assignee by suit or on appeal or otherwise. Seller waives all defenses that otherwise might have been available but nothing herein contained shall preclude Assignee from enforcing against Seller any other remedies provided by law for misrepresentation or breach of warranty. In the event of any proceedings commenced by Assignee against Buyer with respect to the contract, services or the Collateral, if Buyer asserts as a defense, setoff or counterclaim any act, omission or default by Seller, Seller shall forthwith on demand repurchase the contract for the amount set forth above. The provisions of this assignment shall be binding on the heirs, representatives, successors and assigns of Seller and shall inure the benefit of the successors and assigns of Assignee. The above assignment provisions apply and are in addition to any obligations of Seller as provided in the paragraph below endorsed by Seller.

**1. RECOURSE:** Seller absolutely and unconditionally guarantees the prompt payment of either the total unpaid amount of the contract and any accrued interest or such other amount agreed to by Seller and Assignee in a separate agreement, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives any and all defenses arising out of the guarantor relationship.

Seller: _____ By: _____

Title: _____ Date: _____

**2. REPURCHASE:** In the event of default by the Buyer under any of the terms or conditions of the contract, Seller will repossess and repurchase the Collateral, or if the Collateral has already been repossessed, Seller will repurchase the Collateral at the place of repossession or recovery. The Collateral will be repurchased in any event AS IS, at a price equal to the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the default, together with all costs, expenses and reasonable attorney's fees incurred by Assignee in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives all other defenses that might otherwise have been available. At the time of repurchase, Seller shall pay to Assignee the purchase price in cash and Assignee may reassign to Seller without recourse and without warranties, express or implied, all title retention or lien instruments and all contracts or promissory notes which Assignee then holds upon such Collateral.

Seller: _____ By: _____

Title: _____ Date: _____

**3. LIMITED ENDORSEMENT:** In the event of default of Buyer before Buyer shall have paid the first _____ installments under the foregoing contract, Assignee may reassign the contract to Seller and Seller agrees, upon tender of such reassignment and in consideration thereof to pay to Assignee either the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the reassignment, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and Seller waives any other defenses that might otherwise have been available.

Seller: _____ By: _____

Title: _____ Date: _____

**4. WITHOUT RECOURSE:** This assignment shall be without recourse against Seller except for such obligations as are set forth in the assignment above.

Seller: **CHAPMAN'S LAS VEGAS DODGE LLC** By: _____

Title: **KASANDRA EGELSTON**     **F&I MANAGER** Date: **10/12/2024**

**LAW®** FORM NO. 553-NV-e (REV. 10/12) U.S. PATENT NO. D460,782
©2012 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT 2</u>**
Subject Vehicle Title Information



## Lien and Title Information Report

███-MOUNTAIN AMERICA CREDIT UNION

| | | | |
|---|---|---|---|
| **Customer** | | **VIN** | 3C63RRGL5RG273586 |
| **Organization ID** | ███ | **Organization Name** | MOUNTAIN AMERICA CREDIT UNION |
| **Lien Start** | | **Lien End** | |
| **Original Loan Amount** | $0.00 | **Lien Balance Amount** | $0.00 |
| **Lien Type** | | **Dealer ID** | |

---

### Last ELT Transactions

| Received On | |
|---|---|
| 2024-11-22 11:42:36.0 | Add Record - Perfection of Lien |

---

### Borrower / Lesee Details

**Name**

**Address**

---

### Vehicle Information

| | | | |
|---|---|---|---|
| **Vehicle Type** | | **Make** | |
| **Model** | | **Year** | |
| **Mileage** | 0 | | |

---

### Title Information

| | | | |
|---|---|---|---|
| **Title Number** | ET017558106 | **Title State** | NV |
| **Tag Number** | | **VIN** | 3C63RRGL5RG273586 |
| **Status** | UNMATCHED | **Match Date** | |
| **Lien Expiration Date** | | **Media Type** | Electronic |

---

### State Information

| | | | |
|---|---|---|---|
| **Name** | HARDY LAUREN ROBERTA | **Lessee** | |
| **Address** | ███████████ | | |
| **Vehicle Type** | | **Make** | RAM |
| **Model** | 3500 TRADE | **Year** | 2024 |
| **Mileage** | 12 | | |
| **Title State** | NV | **Title Number** | ET017558106 |
| **Brands** | Unladen Gross Vehicle Weight: 006953 Gross Vehicle Weight: 006500 | | |

1

**EXHIBIT 3**
Subject Vehicle Valuation

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**J.D. POWER**

9/9/2025

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2024 Ram Ram 3500 Crew Cab Tradesman 4WD DRW 6.7L I6 T-Diesel** |
| Region: | **Desert Southwest** |
| Period: | **September 9, 2025** |
| VIN: | ▉▉▉▉▉▉▉**3586** |
| Mileage: | **27,500** |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly Used** | | | | |
| Rough Trade-In | $52,875 | N/A | N/A | **$52,875** |
| Average Trade-In | $54,900 | N/A | N/A | **$54,900** |
| Clean Trade-In | $56,575 | N/A | N/A | **$56,575** |
| | | | | |
| Clean Loan | $50,925 | N/A | N/A | **$50,925** |
| Clean Retail | $61,850 | N/A | N/A | **$61,850** |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power

1

**<u>EXHIBIT 4</u>**
Account History/Status

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HARDY,LAUREN**    2024 - RAM TRUCK 3500    ..09/09/2025

Principal Balance:        48,198.97

Interest Rate:              12.740

Due Date:               05/26/2025

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT 5</u>**
Proposed Order

1

2

3

4

5

6

7

8

9

10

ANGELA H. DOWS, ESQ.
Nevada Bar No. 10339
**CORY READE DOWS & SHAFER**
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89128
T: (702) 794-4411
F: (702) 794-4421
E: adows@crdslaw.com
*Attorneys for Creditor*
MOUNTAIN AMERICA CREDIT UNION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | ) | Case No.:      25-11638-abl |
| | ) | Chapter:      13 |
| | ) | |
| JAY PHILIP HARDY, | ) | ORDER ON MOTION FOR RELIEF |
| LAUREN ROBERTA HARDY, | ) | FROM THE AUTOMATIC STAY |
| | ) | RE: MOTOR VEHICLE |
|                              Debtors. | ) | (2024 RAM 3500) |

Hearing Date: November 5, 2025
Hearing Time: 10:30 a.m.

Creditor Mountain America Credit Union's Motion for Relief from the Automatic Stay, having come on for hearing before the above-entitled court on the 5th day of November, 2025 after the motion and notice thereof were duly noticed; Mountain America Credit Union being represented by its counsel Angela H. Dows, Esq., for the law firm of Cory Reade Dows & Shafer; Debtors not asserting an opposition, or appearing in person and/or through counsel; the Court having reviewed the pleadings, papers and records on file; and good cause appearing:

1

2

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Creditor Mountain America Credit Union's Motion for Relief from the Automatic Stay is hereby granted.

3

4

5

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all stay provisions are hereby terminated as to personal property commonly known as: a 2024 Ram 3500 motor vehicle, with a Vehicle Identification Number ending in 3586.

6

7

8

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to a surrender and/or the request for a waiver in the subject motion (*see* ECF No. ____ *at* ECF page ____) the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived.

9

RESPECTFULLY SUBMITTED this ____ day of November, 2025:

10

**CORY READE DOWS & SHAFER**

11

12

13

14

/s/ Angela H. Dows
ANGELA H. DOWS, ESQ.
Nevada Bar No. 010339
1333 North Buffalo Drive, Suite 210
Las Vegas, Nevada 89128
Telephone:  (702) 794-4411
Attorneys for Creditor
MOUNTAIN AMERICA CREDIT UNION

15

16

###

17

18

19

20

21

22

23

24

25

2

## CERTIFICATION PURSUANT TO LR 9021

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

____ The Court has waived the requirement set forth in LR 9021(b)(1).

____ No party appeared at the hearing or filed an objection to the motion.

____ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

| Attorney for Debtor | Trustee |
|---|---|
| ____ Approve<br>____ Disapprove<br>____ Failed to Respond<br>____ Waived | ____ Approve<br>____ Disapprove<br>____ Failed to Respond |
| By: _____<br>Eric C. Severino<br>Law Office of Erik Severino<br>7251 W. Lake Mead Boulevard<br>Suite 300<br>Las Vegas, NV 89128<br>*Counsel for Debtors* | By: _____<br>Rick A. Yarnall<br>701 Bridger Avenue<br>#820<br>Las Vegas, NV 89101<br>*Chapter 13 Trustee* |

 X__ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

[Intentionally left blank]

3